Your Honors, may it please the Court, my name is Matt Doden and I represent David Elmore. I'd like to reserve two minutes of my time for rebuttal today. Your Honors, Mr. Elmore respectfully requests that you reverse the District Court's grant of summary judgment for two simple reasons. First, the IRS foreclosed on tax liens that even they now concede are invalid. And second, the District Court upheld the assessment against Mr. Elmore even though a rational trier of fact viewing the evidence in a light most favorable to Mr. Elmore could find that he established there was no rational basis for the assessment. Could I take your arguments in the order you posed them? And let me ask you about the lien. Assuming that the summary judgment was okay, which of course you do not, could the Court have issued a writ of execution on Mr. Elmore's property at the end of the case? Your Honor, the 26 U.S.C. 7403 provides for a court to sell a taxpayer's property. The IRS has to establish a claim or interest therein. So assume that they received a judgment of whatever amount of back taxes in this case and the lien had expired, as you contend. Did the District judge have issued a writ of execution on the property? Your Honor, yes. We would have disputed that issue if it had been raised below. How would you have disputed it? Your Honor, I would have to litigate the particular standard that that would be in. But there would have been a judgment. I mean, just take this out of the ordinary. Take this out of the tax context. When one gets a judgment in a court and they can go out and execute on somebody's property to satisfy the judgment in the absence of a supersedious bond, I'm trying to figure out in the end, even if the lien is no good, how your client was injured by foreclosing the lien as opposed to the District judge issuing a writ of execution on the property itself. Yes, Your Honor. That's precisely the problem, is that the IRS only pursued under the lien. It's the only defense that Mr. Elmore has had the opportunity to litigate. Okay. But I'm asking you today, what possible defense could you have once a judgment was entered to a writ of execution on his property? You could, of course, post a bond to prevent execution, but what possible defense would you have had? Your Honor, having not researched that issue, I'm not prepared to respond to that issue right now. The only thing I can state before you today is that simply Mr. Elmore hasn't been provided that opportunity yet. The IRS's complaint in this case only sought foreclosure of the liens. Can I move back to, before we get to the foreclosure, because I want to be sure where we are in this case, my understanding is that Mr. Elmore has conceded that the government discharged its initial burden and that he had the burden to come forward with evidence. Is that correct? No, Your Honor, it's not correct. The IRS has asserted this argument citing a quote from the oral argument for the District Court. However, if you review our briefs in that case, in no way did we ever concede that the IRS had offered a minimum factual foundation. Moreover, the District Court itself didn't find in its opinion that we had waived that issue, instead directly addressing whether or not the minimum factual foundation had been established. Okay, so for your purposes, you believe that we should treat this as a determination solely by the trial judge that a prima facie case had been offered by the service, and then it's a dispute from your perspective that whether you bore your claim that the IRS can't rely on hearsay, and of course the government comes back with authority that in fact they are able to rely on hearsay with respect to its methodology. So where does that leave us here? There was clearly a determination that your folks did not respond, and in effect you essentially defaulted to the government's claims. What response do you have at this point? To the issue of whether or not we've defaulted to the government's claim, we've always been a little bit confused by this argument. The complaint itself alleged that Mr. Elmore received these assessments made, and Mr. Elmore denied that allegation. But even putting that issue aside, the law is clear. A defendant to the IRS's tax assessments can defeat the presumption of correctness by establishing to a preponderance of the evidence that the IRS's methodology was arbitrary. And I think that's the question Judge Smith was asking you and I'm focusing on. If you put aside the question of whether you conceded the initial reasonableness, do you agree that it's your burden in this case to demonstrate that the IRS's methodology was arbitrary, capricious, with that basis in fact? If the IRS can establish that they've offered a minimum factual authority, yes. That's the question. Has the IRS established a minimum factual basis? No, Your Honor, and there's no better example of that than the rental income assessment. For the proof of the rental income assessment, the IRS offered through the declaration of Agent McGilvery, who conducted the examination in this case, that they relied on essentially two pieces of evidence, the property records and a purported field call with an anonymous person who claimed to be a renter. And we're familiar with the record, so my question is why isn't that enough given the very low burden the IRS has to establish that it didn't act arbitrarily and capriciously? Talk to somebody who said, I pay $300 a month. I think he also said, I think the other people pay about the same, but I can't tell you for sure. And then there's a field investigation. Given the very low burden for establishing, you didn't dispute the deficiencies when they were first entered. So given that very low burden, why hasn't the IRS met it with that? Because the property records say nothing about the receipt of income, Your Honor. The property records, I agree. But, no, you told me that somebody told the field agent that he paid $300 a month in income and that there were, I think, three other properties there and that they look similar and they thought he paid the same. Why isn't that enough to establish the rental income? Because the IRS is offering that for the truth of the matter asserted. The IRS is offering out-of-court statements of this anonymous person that Mr. Elmore received income. No, the IRS is offering it to establish that it had some evidence at the time that it made this assessment. It's offering that to show that it had a prima facie case, if you will, at the time. Very little evidence is required. It's offering to show its process. It's not offering to show the truth of the matter. And in that connection, doesn't the Avery case respond to your contention? Doesn't Avery say that the government is allowed to use, if you will, hearsay, to show its methodology? That, Your Honor, is putting the cart before the horse. Well, let's get something out in front because you all keep going back to stuff that you don't have. You say, you know, we don't like what the IRS has, but your client kept no records. You can't have it both ways, counsel. What is it? The way the test is set out, it's the IRS burden initially to offer its minimum factual foundation. What that means is that they have to offer proof that the taxpayer received income from the sources alleged. The testimony of this anonymous person is being offered for its truth as to that element. Okay, it's hearsay. We get that. Avery says you can use hearsay to affirm the methodology used by the IRS. Normally, you would come in and say, look, I have these properties, these are my records, and this is why it's wrong. You don't have any records. How can you refute that? Because the methodology is the second element in the analysis. When we assess whether the IRS had a rational basis, a rational methodology to make the assessment, the burden has already shifted to the taxpayer. The IRS has already proven that the taxpayer received income from the sources alleged. We don't even get to that issue of the methodology if the IRS can't offer evidence up front that the taxpayer received income from the sources alleged. What significance is there to your client's failure to dispute the deficiencies when first imposed? Your Honor, as I discussed earlier, we do dispute that he hasn't contested that in nine years of litigation when, in his own answer, he refuted the allegation. But there's an administrative proceeding. There's an IRS proceeding for disputing this stuff. You don't disagree that your client didn't avail himself of that? He did not avail himself of the administrative process. So what significance is there to his failure to go through that administrative process with respect to the validity of the assessments? No significance, Your Honor. The case law in this Court and all the other jurisdictions establishes that a taxpayer can defend against a tax assessment by either proving the IRS lacked a minimum foundation or that the methodology of the IRS was wrong. I guess what I'm going at is this. Had you shown up in the administrative proceedings, I think you could have put the IRS to its proof. You could have said, I want to see we're going to have a hearing and you've got to prove this stuff in order for me to, you know, and you might well have the burden of the IRS. But once the assessments are made, isn't the only question whether they had any rational basis for doing so? Your Honor, the question that the IRS initially has to offer is, did they have a rational basis for doing so? Thank you. But one other point I would like to raise on that issue is that while the district court upheld the majority of the assessments against Mr. Elmore, it actually struck down two of them. They're not an issue in front of us, are they? Exactly, because they were not appealed, Your Honor. And that's if the IRS wanted to contend that Mr. Elmore had no right to defend himself unless he offered proof of his income, they had to appeal those assessments. Why? Because by not doing so, they waived that issue, Your Honor. But they're allowed to use any arguments they want to to defend the judgment they got. The failure to file a cross appeal means they can't improve what they got, but they can use whatever argument they want to to defend this judgment. It's my understanding, Your Honor, that the longstanding cross appeal rule of this court is that an appellee who fails to file a cross appeal cannot attack a judgment with a view towards enlarging his own rights. So how is he trying to attack the judgment? That's exactly what I just said. They're not trying to attack the judgment. What you just read said nothing about waiving an argument that they want to use to defend the judgment. Your Honor, I do believe that the ---- Trust me on this one. I will trust you, Your Honor. You've also exhausted your time, but because we helped you use it, we'll give you some time for rebuttal. Thank you. May it please the Court, Joan Oppenheimer for the United States. Could you pull the microphone down just a bit, please? Is this better? That is better. Okay. I'd first like to address the foreclosure issue. We do agree that there was no longer any lien on the property. But as this Court recognizes, we're appellee when it comes to the foreclosure action, and we can defend on any ground whether relied on or considered by the Court below, and Section 7403 makes it perfectly clear that when there's been a neglect or refusal to pay taxes, the Attorney General or his delegate may bring an action to enforce the lien of the United States or to subject any property of whatever nature of the delinquent or in which he has the right, title, or interest to the tax liability. Would Mr. Elmore have had any greater procedural rights than he was afforded here or substantive rights if you had brought this foreclosure action? Well, we did bring this foreclosure. I understand. You brought an action to foreclose on a lien, and we all agree that the lien is, you know, doesn't, isn't there. Are you basically saying we should just transform it into a 7403 foreclosure, if you will? Well, it was a 7403. I mean, we brought. Okay. Well, let me ask the question differently. Was there any harm to Mr. Elmore from the fact that the lien expired? No, for purposes of this action. The government brought an action to reduce the assessments to judgment and to foreclose against properties in which he had an interest. Right, and you were seeking at that point to foreclose a lien on properties, were you not? Right, but so now we're just, yes, that's correct, but now we're just seeking, you know, an order of sale. The action was brought under 7403, so we did, you know, actually request foreclosure. Perhaps we should have, you know, used the total phrase of the title action to enforce lien or subject property to payment of tax. The statute, it's the same statute. It's phrased in the disjunctive. He doesn't deny having an interest in the property. And my question is, and I think you've answered it, but I want to be sure. Let's assume you had titled the action at the beginning as one to foreclose an interest in property and you did not yet have a lien. Would the case have proceeded any differently than the way it proceeded in disjunctive? No. Okay, thank you. He had the full right to say, I have no interest in that he could defend himself by saying I don't owe the taxes or that I have no interest in the property. He doesn't deny an interest in the property. He really doesn't claim he doesn't owe the taxes. He just sort of takes all these pot shots at the government's evidence but has no evidence himself. Can I ask you a question about the foreclosure? As I understand it, the other people who claimed they had an interest in the camp property were joined in the government's action. Is that correct? Yes, it is. And were these people that purported to have other inferior liens or what were they? Well, I think they were actually people with prior title to the property. Oh, I see. So these were people in the chain of title. That's correct. So this was, in effect, almost like a quiet title action that you had pursued with respect to them. Anytime the government brings an action under 7403, it lists everybody who has a record interest in the property. And was any consideration paid by the government to any of those people in exchange for their release of interest in the property? As I understand it, no. The government, I think, conceded that Sharon Gooding had a senior lien, and then when the property was ultimately sold, I guess she didn't put forth that she had any monetary interest in the property. So she ultimately didn't receive anything. Normally, if she had asserted a lien and the property had been sold, then the government would have to satisfy that lien, right, if it wanted to clean property. The property was sold, and the government did request her to state how much she owed. And I think she, at that point, wasn't owed anything because Hare, I think, maybe the taxpayer ultimately agreed to pay. When he got title from Hare, I believe he ultimately assumed the deed of trust is, I think, how it worked. But the government had conceded that she had a senior lien, and Hare disclaimed any interest in the property. Can we go back to the liability issue for a second? Yes. As I understand it, what happened here, a lot of the government's records were lost, were not available, correct? Yes, that's correct. So tell me what evidence there was to support, let's start with the rental income, to support the notion that the government had not acted in an arbitrary fashion, to meet your initial prima facie burden. Well, to me, as Your Honor recognizes, we only have a burden of showing that there's a minimum evidentiary foundation. The evidence was a quick claim deed in 1986 from the taxpayer's ex-wife to him,  presumably that would suggest that he had an interest in the property. That was what the district court relied on. The other evidence is establishing the government's minimum evidentiary foundation. The other evidence that the court had was the revenue agent went out to the property. He spoke to a tenant. The tenant said, I pay rent of $300 a month, and I pay it to Elmore, and there are four other people and four other units, and they each pay money to the same amount of money. So now the government is not required to prove the accuracy of its assessment. That is Elmore's burden of proof, and he keeps mixing it all up, and, you know, saying the government didn't prove. The government's not required to prove, but once we establish a minimum evidentiary foundation, which we did here, then it's the taxpayer's burden to disprove. Do you think that Elmore's counsel conceded at oral argument on the summary judgment motions the accuracy of the assessments? I read the record that way, but I also see the district court going ahead and taking you through the steps of the process. So how do you read this? I don't think he conceded the accuracy of the assessments. He conceded that the government had satisfied its burden of showing the minimum evidentiary foundation. Sorry, I misspoke. So you think that was conceded below and, therefore, the burden, without regard to whether or not you established it as a legal matter, you think the other side conceded it? Yes, we do, and we've quoted the oral argument transcript that I'll read. But if that's the case, why did the district court go on to analyze this case as if it weren't conceded? Well, of course, I can't speak for the district court. Maybe, you know, sometimes district courts decide things on multiple grounds, on the theory that if they're reversed on one ground, they still have the other ground to stand on. I've seen numerous cases that are decided on alternate grounds when only one of them would have been necessary to the decision. In fact, this district judge is one of the most thorough judges I have ever seen. He dealt with every issue that was presented exhaustively and I think also correctly. I think one of the critical points in this case is that in order to defeat a motion for summary judgment, the opponent has to set forth sufficient evidence to justify a verdict in his favor. Elmore did not do that here. Elmore has no... What supports that position? You're the move-on. What requires the defendant to present a prima facie case? He has to make sure that you haven't presented a prima facie case. Well, there's a law in this circuit. There's a case that we cited in our brief that says in order to defeat a motion for summary judgment... A plaintiff has that burden. The plaintiff has to be able to show it can get to a jury, but a defendant simply has to prevent the plaintiff, in this case you, from getting to a jury. It says this court has held... No, it was the Supreme Court in Anderson v. Liberty Law. This is the Celotex trilogy. What you're saying is you could file a motion for summary judgment depending on who has the burden of proof. It says to the side with the burden of proof, show me that you've got enough evidence to go to the jury. But I think in this case, given the fact that you brought the motion, wasn't the burden on you to demonstrate that there was no factual dispute? No. The Supreme Court has held that to defeat a motion of factual... Those are in. I know what the Supreme Court has held. Anderson v. Liberty Law v. Celotex all say you can force the party. You can file a motion for summary judgment that says, I'm not attaching any affidavits at all. I'm asking the party with the burden of proof to step forward and show that there's a factual question. I think the difficulty here is that initially you have the burden of proof, don't you? No, we don't. We have a... You have to establish your claim and face your case. Well, we sought judgment to reduce the assessment to judgment. So we produced the assessments. Taxpayer then attacked the assessments. Thereby satisfying your initial burden of production, and then the other side has to demonstrate that there's a factual issue for trial, which I don't think they did, by the way, in this case. But I think you're confusing a case where the other side has the initial burden. That's what Celotex and Anderson and Liberty Law were about. But as Judge Clifton said before, trust me on this one. Well, bottom line, though, is, as I understand the government's position, you met your prima facie obligation. They had an obligation to show your error. They didn't produce really anything. They attacked your methodology, but they did not produce evidence. Is that correct? That is correct. So for purposes of summary judgment, when you produce your evidence and they don't produce any, they lose. Is that your position? Yes, it is, Your Honor. Okay. Thank you.  We'll have rebuttal. Your Honors, I'd like to briefly address this issue that Mr. Elmore purportedly didn't raise any evidence in his defense. The case law in this circuit and others is clear. One way that a taxpayer can defend himself is by demonstrating that the IRS's methodology was arbitrary. Yes, but assume you lose on that. What evidence did you produce to rebut the IRS's calculations? Mr. Elmore, take the stand and say, I never got any money from this rental, these rental properties. Mr. The witness you interviewed was a liar. I had no interest whatsoever in them. What's the contrary evidence that would have led the district judge to determine that I have to have a trial to figure out who's telling the truth? Well, we cite examples in our brief, but I'll focus you on one in particular, which would be the rental income assessment. Mr. Elmore could present the working papers of the IRS and Agent Turlow. That's not the question. What did he present? What evidence did you come forward with in the district court to indicate that the IRS's calculation was incorrect? Proof of the IRS's methodology yourself, Your Honor. Okay. So you're back on that. So from your perspective, it sounds like you can see that your response to the IRS's methodology, that's it, right? Yes. You believe that's sufficient. If you're wrong, you lose, right? Yes, Your Honor. Okay. And just to briefly draw this Court's attention to the Ninth Circuit's decision in the United States v. Stonehill where it stated an error of methodology demonstrates a pattern of arbitrariness or carelessness, it will destroy the presumption for the entire assessment. It doesn't say that the taxpayer has to offer alternative proof of his income. Right. But that goes to the presumption of correctness. So if we get – if we find a presumption of correctness, do you concede that you didn't put in – put forth any evidence to rebut it? No, Your Honor. The presumption of correctness can be destroyed by proof that the methodology was arbitrary. No, I'm – yeah. I'm – okay. We're probably – we're probably talking across purposes. But there's no – as you told Judge Smith, if the methodology is acceptable in this case, then you lose, right? If the – if the – if this Court holds that the IRS did, in fact, offer a minimum factual foundation and the methodology is not a fair defense to a taxpayer, then yes, Your Honor. Well, because I wanted to make sure there wasn't some evidence in the record other than that that I was overlooking. We've brought all the evidence before this Court that we have at this time. Thank you, Your Honor. Which is to say none. Again – Other than attacking the methodology, right? Your Honor, I would disagree and I would highlight this Court's opinion – this Court's statement in Weimar Scourge. No, I'm not – I may mess up the law, but I have people who help me not do that. Other two people will help me not do that. I'm trying to figure out the facts. Just conceding for a second that you put in lots of attacks on the IRS's – IRS's methodology, assuming that we disagree with you about the IRS's methodology, that we find it appropriate and that, therefore, there is a presumption of correctness in this case that – is there anything else to rebut that presumption of correctness that you introduced? No, Your Honor. Thank you. Thank you. We thank both counsel for your helpful arguments. We understand that Mr. Dodin and his firm took this case as part of our pro bono representation project, and we appreciate your service to the Court. Thank you.
judges: Clifton, Smith, Hurwitz